UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| KENDRA OWEN | ) | |
|    Plaintiff | ) | |
| | ) | |
|    v. | ) | CASE NO. 3:23-cv-00040-MPB-MJD |
| | ) | |
| OFFICER M. TAYLOR (Badge No. 2X1397) | ) | |
| | ) | |
|    Defendant | ) | |

**<u>DEFENDANT'S ANSWER, AFFIRMATIVE<br>DEFENSES AND DEMAND FOR JURY TRIAL</u>**

  Defendant Officer M. Taylor ("Officer Taylor"), by counsel, for his answer, affirmative defenses and demand for jury trial related to Plaintiff's Complaint for Damages [ECF No. 1], states:

  1. Kendra Owen occasionally drives for the ride-sharing service Uber. Late on the evening of January 14, 2023, she therefore parked legally in downtown Evansville, not far from several bars and restaurants, while she waited to be contacted by a potential fare. Upon seeing her vehicle parked legally—Ms. Owen kept the engine running as the temperature was below freezing outside—Officer M. Taylor (Badge No. 2X1397) of the Evansville Police Department initiated a traffic or investigatory stop without probable cause or reasonable suspicion of any kind. When Ms. Owen, knowing that she had done nothing wrong, subsequently declined to provide identification to Officer Taylor, he then proceeded to order Ms. Owen out of her vehicle and conduct a non-consensual pat-down search. And, when she still declined to provide identification—or her vehicle registration or proof of insurance—Officer Taylor proceeded to issue her a citation for operating a vehicle without proof of financial responsibility, to search the interior of her vehicle without her consent, to

cause her vehicle to be towed to an impound lot, and to leave Ms. Owen on the sidewalk in below-freezing temperatures while she awaited a ride from a family member. All of this represents a gross violation of Ms. Owen's Fourth Amendment rights, and she is entitled to her damages, including punitive damages.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 1 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

### Jurisdiction, Venue, and Cause of Action

2. The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

**ANSWER:** Officer Taylor admits the allegations contained in rhetorical paragraph 2 of Plaintiff's Complaint.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**ANSWER:** Officer Taylor admits the allegations contained in rhetorical paragraph 3 of Plaintiff's Complaint.

4. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 4 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

### Parties

5. Kendra Owen is an adult resident of Gibson County, Indiana.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 5 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

6. Officer M. Taylor (Badge No. 2X1397) is an adult individual who was, at all relevant times, employed as a law enforcement officer by the Evansville Police Department.

**ANSWER:** Officer Taylor admits the allegations contained in rhetorical paragraph 6 of Plaintiff's Complaint.

## Factual Allegations

7. Kendra Owen is an adult individual who frequently drives for the popular ride-sharing service Uber. She has been driving for Uber for approximately since 2017 although she did not do so between the spring of 2020 and the autumn of 2022 due to the COVID-19 pandemic. As most Uber drivers, Ms. Owen uses her own car when driving for Uber.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 7 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

8. In order to drive for Uber, Ms. Owen identifies herself as an available driver through an application, or "app," on her Smartphone. When individuals close to her location request a ride from an Uber driver, generally through the Uber "app" on their own Smartphones, Ms. Owen receives a notification and is able to designate herself as responding to a request for a ride.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 8 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

9. In Ms. Owen's experience, rides from Uber drivers are most consistently requested on weekend evenings by persons departing bars or other locations where they have consumed alcohol. This becomes even more common during the winter months, where the weather may cause even persons who live within walking distance to request a ride from an Uber driver. On a single night of driving for Uber, Ms. Owen will typically have ten or twelve fares and will make between $100.00 and $200.00.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 9 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

10. Late on the evening of Saturday, January 14, 2023, Ms. Owen was driving for Uber. In order to do so, she parked a couple of blocks away from several bars in downtown Evansville, Indiana.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 10 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

11. She parked legally on West Illinois Street facing eastbound between North St. Joseph Avenue and North 12th Avenue. Because the weather was below freezing outside, Ms. Owen kept her vehicle's engine running so that the heat inside her vehicle would remain on. She then sat in the driver's seat watching videos on her Smartphone while she waited to

receive a ride request through the "app" on her phone, presumably from one or more individuals departing the nearby bars.

**ANSWER:** Officer Taylor admits that he encountered Plaintiff's car on West Illinois St. between N. St. Joseph Avenue and N. 12th Avenue, but Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations contained in rhetorical paragraph 11 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

12.     Between 11:00pm and 11:30pm, Officer M. Taylor of the Evansville Police Department noticed Ms. Owen's vehicle, which, as noted, was parked legally in downtown Evansville albeit with the engine running. He parked his marked police cruiser directly behind Ms. Owen and, after approximately thirty seconds, activated the cruiser's emergency lights.

**ANSWER:** Officer Taylor admits the allegations contained in rhetorical paragraph 12 of Plaintiff's Complaint.

13.     At this point, Ms. Owen was not free to leave the scene and a reasonable person would not have considered him- or herself free to leave the scene.

**ANSWER:** Rhetorical paragraph 13 states a legal conclusion to which no response is required. To the extent that a response is required, Officer Taylor denies the allegations contained in rhetorical paragraph 13 of Plaintiff's Complaint.

14.     Before getting out of his vehicle, Officer Taylor radioed the license plate number of Ms. Owen's vehicle to dispatch in order to have a "check" run on the vehicle. In response, dispatch informed Officer Taylor that the registered owner of the vehicle was Ms. Owen and that "there is an 'alert' on her that she has been seen acting suspiciously . . . at

various locations" and that, on those separate occasions, she "refused to identify herself" and "was uncooperative." Dispatch further informed Officer Taylor that these incidents occurred in 2017 and 2018.

**ANSWER:** Officer Taylor admits he radioed dispatch to run a check on Plaintiff's license plates and that he was alerted of previous reports of Plaintiff behaving suspiciously in public locations, but Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations contained in rhetorical paragraph 14 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

15.  On a handful of occasions in 2017 and 2018, Ms. Owen engaged in legal activity, occasionally referenced as "First Amendment auditing," in which she openly recorded public spaces such as a post office. At no point during these occasions did she violate any law, nor was she arrested for or criminally charged with any offense. At the time of the events giving rise to this litigation, she did not realize that a law enforcement "alert" had been established as a result of her legal, and constitutionally protected, activities.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 15 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

16.  After receiving this information from dispatch, Officer Taylor approached Ms. Owen's vehicle and indicated initially that he "just wanted to check" on Ms. Owen. She responded politely that she was "fine."

**ANSWER:** Officer Taylor admits the allegations contained in rhetorical paragraph 16 of the Plaintiff's Complaint.

17. At that point, Officer Taylor requested that Ms. Owen provide him with identification. As she had not done anything wrong and there was no reason to believe that she had done anything wrong, Ms. Owen declined to provide her identification to Officer Taylor.

**ANSWER:** Officer Taylor admits he requested Plaintiff provide him with her identification and she refused, but Officer Taylor denies the remaining allegations contained in rhetorical paragraph 17 of Plaintiff's Complaint.

18. Officer Taylor then informed Ms. Owen that "this is an investigation" but made no mention of what he was allegedly investigating. He then asked for Ms. Owen's identification, vehicle registration, and proof of insurance. Again, as she had not done anything wrong and there was no reason to believe she had done anything wrong, Ms. Owen declined to provide this documentation to Officer Taylor.

**ANSWER:** Officer Taylor admits that he then informed Ms. Owens that "this is an investigation," that he then asked for Ms. Owen's identification, vehicle registration, and proof of insurance and that Ms. Owen declined to provide this documentation to Officer Taylor. Officer Taylor denies the remaining allegations contained in rhetorical paragraph 18 of Plaintiff's Complaint.

19. Officer Taylor then explained that Ms. Owen was parked next to a bank. While certainly true—Ms. Owen happened to be parked next to a branch of Fifth-Third Bank, one of several banks located in downtown Evansville—there is nothing illegal, or even suspicious, about parking legally in front of a bank. At no point did Officer Taylor inquire as to why Ms. Owen was parked there.

**ANSWER:** Officer Taylor admits he stated to Ms. Owens that she was parked next to a Fifth-Third Bank location, but Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 19 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

20. Around this point in time, two additional law enforcement officers employed by the Evansville Police Department arrived at the scene, although Officer Taylor continued to be the officer who interacted directly with Ms. Owen.

**ANSWER:** Officer Taylor denies that any officer is employed by the Evansville Police Department but otherwise admits the allegations contained in rhetorical paragraph 20 of Plaintiff's Complaint.

21. Officer Taylor then instructed Ms. Owen to exit her vehicle and she did so. Without soliciting or obtaining Ms. Owen's consent to conduct a pat-down search, he then ordered her to spread her arms and legs and he conducted a pat-down search. At this point, there was no suspicion, let alone reasonable suspicion, that Ms. Owen was armed or dangerous. The pat-down search did not reveal any weapons, any evidence of criminal activity, or even anything out of the ordinary.

**ANSWER:** Officer Taylor admits he performed a search of Ms. Owen's person, but Officer Taylor denies the remaining allegations contained in rhetorical paragraph 21 of Plaintiff's Complaint.

22. Officer Taylor then instructed Ms. Owen to sit on the curb. Insofar as she suffers from longstanding back pain and was concerned that she might struggle to lower

herself to the curb or to get up from the curb, and insofar as the ground was extremely cold, Ms. Owen declined to do so and instead sat on the rear bumper of her vehicle.

**ANSWER:** Officer Taylor admits he instructed Ms. Owen to sit on the curb and that Ms. Owen instead sat on the rear bumper of her vehicle. Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations contained in rhetorical paragraph 22 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof

23. Officer Taylor then demanded once again that Ms. Owen provide him with identification, vehicular registration, and proof of insurance. As she had not done anything wrong and was becoming increasingly angry at Officer Taylor's behavior, Ms. Owen once again declined to provide this information.

**ANSWER:** Officer Taylor admits he repeated his request for Ms. Owen to provide identification and she again refused, but Officer Taylor denies the remaining allegations contained in rhetorical paragraph 23 of Plaintiff's Complaint.

24. Officer Taylor then inquired as to whether Ms. Owen had proof of insurance. Ms. Owen did (and does) have proof of insurance and she responded, truthfully, that she did and that she could access it on her Smartphone. Officer Taylor then asked if Ms. Owen wanted to retrieve her Smartphone so that she could provide him with her proof of insurance, and she again declined to do so.

**ANSWER:** Officer Taylor admits the allegations contained in rhetorical paragraph 24 of Plaintiff's Complaint.

25. Officer Taylor's questioning with respect to whether Ms. Owen had proof of insurance was entirely unrelated to the reason that he had initiated Ms. Owen's detention,

even if that detention was justified at its inception (which it was not). This questioning served to unjustifiably prolong Ms. Owen's detention.

**ANSWER:** Officer Taylor denies the allegations contained in rhetorical paragraph 25 of Plaintiff's Complaint.

26. At this point, Officer Taylor decided that he would have Ms. Owen's vehicle towed and he contacted a tow company to request that a tow truck be dispatched to their location. Despite the fact that the vehicle remained legally parked and was not obstructing traffic in any way, Ms. Owen was not given the option to contact a friend or family member to help her transport the vehicle to her home or some other location even if she would not be allowed to drive the vehicle herself.

**ANSWER:** Officer Taylor admits that at this point, Officer Taylor decided that he would have Ms. Owen's vehicle towed and he contacted a tow company to request that a tow truck be dispatched to their location, but Officer Taylor denies the remaining allegations contained in rhetorical paragraph 26 of Plaintiff's Complaint.

27. While waiting for the tow truck, without Ms. Owen's consent Officer Taylor entered the interior of Ms. Owen's vehicle and thoroughly searched her vehicle. He referenced this search as an "inventory search." Ms. Owen inquired as to whether Officer Taylor intended to document the contents of the vehicle and he indicated that he would. However, she did not see him make any written notes while or immediately after he searched her vehicle.

**ANSWER:** Officer Taylor admits that, while waiting for the tow truck, without Ms. Owen's consent Officer Taylor entered the interior of Ms. Owen's vehicle and thoroughly searched her vehicle. He referenced this search as an "inventory search." Ms. Owen

inquired as to whether Officer Taylor intended to document the contents of the vehicle and he indicated that he would. Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations contained in rhetorical paragraph 27 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof

28. Officer Taylor did not have reasonable suspicion or probable cause to search Ms. Owen's vehicle, and Ms. Owen certainly did not consent to the search.

**ANSWER:** Officer Taylor admits that Plaintiff did not consent to the search but denies the remaining allegations contained in rhetorical paragraph 28 of Plaintiff's Complaint.

29. Before a tow truck arrived at the scene, Officer Taylor wrote Ms. Owens a citation for operating a vehicle without proof of responsibility, allegedly in violation of Indiana Code § 9-25-8-2. This is so even though Ms. Owen had proof of insurance and Officer Taylor did not witness her "operate" her vehicle as it had been parked the entire time.

**ANSWER:** Officer Taylor admits he issued a citation to Plaintiff for operating a motor vehicle without proof of responsibility but denies the remaining allegations contained in rhetorical paragraph 29 of Plaintiff's Complaint.

30. A true and correct copy of the citation that Ms. Owen received is attached and incorporated herein as Exhibit 1. Although the citation identifies the address of the incident as "2300 W. Franklin St.," this is incorrect: Ms. Owen was parked in the 2300 block of West Illinois Street.

**ANSWER:** Officer Taylor admits the allegations contained in rhetorical paragraph 30 of Plaintiff's Complaint.

31.     Officer Taylor then instructed Ms. Owen to depart the scene. Ms. Owen resides in Oakland City, Indiana, which is approximately a forty or forty-five minute drive from downtown Evansville. She had nowhere to go without her vehicle and she therefore declined to leave the public sidewalk where she was located.

**ANSWER:** Officer Taylor admits he instructed Plaintiff to depart the scene, but Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations contained in rhetorical paragraph 31 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

32.     Instead, Ms. Owen first called her son in Oakland City to request that he drive to Evansville in order to give her a ride home, and then called her nephew (who resides across town in Evansville) to request that he drive to downtown Evansville and allow her to stay at his home while waiting for her son to arrive.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 32 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

33.     Shortly thereafter, a tow truck arrived and removed Ms. Owen's vehicle from the scene.

**ANSWER:** Officer Taylor admits the allegations contained in rhetorical paragraph 33 of Plaintiff's Complaint.

34.     After Ms. Owen's vehicle had been towed, Officer Taylor provided her with a letter regarding the towing company that now had possession of her vehicle and again demanded that she depart the area.

**ANSWER:** Officer Taylor admits the allegations contained in rhetorical paragraph 34 of Plaintiff's Complaint.

35. Before Ms. Owen's nephew arrived to pick her up, Officer Taylor and the other law enforcement officers departed the scene. At the time that they departed the scene, they left Ms. Owen on a public sidewalk, with no coat, in 24-degree weather, as the time approached midnight, knowing that she would be waiting there for a significant period of time before her ride arrived. Needless to say, the wait caused Ms. Owen a great deal of physical pain and discomfort.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 35 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

36. Ms. Owen's nephew finally arrived to give her a ride to his home at approximately 12:20 a.m.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 36 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

37. In total, Ms. Owen was detained for nearly half an hour before Officer Taylor instructed her to depart the scene and she was forced to wait in the cold for longer than that before her ride arrived.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 37 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

38. The following day, Ms. Owen received another ride back to the tow lot in Evansville in order to retrieve her vehicle. She was required to pay $235.00 to receive her vehicle back.

**ANSWER:** Officer Taylor is without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in rhetorical paragraph 38 of Plaintiff's Complaint and, therefore, denies the same at this time and demands strict proof thereof.

39. Ms. Owen subsequently provided proof of financial responsibility to the Vanderburgh County Prosecutor's Office, and the citation that had been issued to her was therefore dismissed.

**ANSWER:** Officer Taylor admits the allegations contained in rhetorical paragraph 39 of Plaintiff's Complaint.

40. As a result of the actions of Officer Taylor, Ms. Owen suffered damages, including lost income and other financial damages as well as emotional and related harm.

**ANSWER:** Officer Taylor denies the allegations contained in rhetorical paragraph 40 of Plaintiff's Complaint.

41. Officer Taylor's actions were taken maliciously and with reckless or callous indifference to Ms. Owen's rights.

**ANSWER:** Officer Taylor denies the allegations contained in rhetorical paragraph 41 of Plaintiff's Complaint.

42. At all relevant times, Officer Taylor acted under color of state law.

**ANSWER:** Officer Taylor admits the allegations contained in rhetorical paragraph 42 of Plaintiff's Complaint.

## Legal Claim

43.     The actions of Officer Taylor violated the Fourth Amendment to the United States Constitution.

**ANSWER:** Officer Taylor denies the allegations contained in rhetorical paragraph 43 of Plaintiff's Complaint.

WHEREFORE, Officer Taylor respectfully requests that Plaintiff take nothing by way of her Complaint and that judgment be entered in favor of Officer Taylor and against Plaintiff and for all other just and proper relief in the premises.

## AFFIRMATIVE DEFENSES

1.      **Failure to State a Claim Upon Which Relief Can Be Granted -** Plaintiff fails to state a claim upon which relief can be granted.

2.      **Plaintiff's Conduct** – Any injury or damage was caused in whole or in part by Plaintiff's own conduct.

3.      **Probable Cause** – Defendant's actions with respect to Plaintiff at all times relevant were based upon probable cause and reasonable suspicion to believe Plaintiff had committed one or more criminal offenses.

4.      **Intentional Conduct** – Damages, if any, alleged by Plaintiff were the result of Plaintiff's own willful, reckless and intentional conduct in resisting the lawful commands of law enforcement, and not by reason of the act or failure to act of Officer Taylor.

5.      **Mitigation of Damages** – Plaintiff may have failed to sufficiently mitigate her alleged damages.

6. **Qualified Immunity** – Officer Taylor acted in good faith within the scope of his law enforcement authority and with objective reasonableness in light of the circumstances presented and is entitled to qualified immunity.

7. **Reservation of Defenses** – Defendant has not had the opportunity to investigate or engage in discovery regarding the allegations and, therefore, Defendant reserves the right to amend, supplement or modify his Affirmative Defenses as they become known through further investigation, research and discovery.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P 38(b), Officer Taylor demands a jury trial on all issues so triable.

Respectfully submitted,

/s/ Bernard J. Lobermann, IV
Keith W. Vonderahe, #21908-82
Bernard J. Lobermann, IV, #36886-49
ZIEMER, STAYMAN, WEITZEL & SHOULDERS, LLP
P.O. Box 916
Evansville, IN  47706-0916
Phone: (812) 424-7575
Fax: (812) 421-5089
E-mail: kvonderahe@zsws.com
blobermann@zsws.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on May 9, 2023, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Bernard J. Lobermann, IV
Bernard J. Lobermann, IV